UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>Plaintiff,<br><br>v.<br><br>TYLER NICODEMUS,<br><br>Defendant. | Case No. 1:18-cv-00226-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Pro se Plaintiff Michael T. Hayes brings this action alleging deliberate indifference in violation of the Eight Amendment by Idaho Department of Corrections officer Tyler Nicodemus. Before the Court are four pending motions: (1) Defendant's Motion for Summary Judgment, Dkt. 29; (2) Plaintiff's Motion for Summary Judgment, Dkt. 31; (3) Plaintiff's Motion to Strike Defendant's motion for summary judgment, Dkt. 32; and (4) Plaintiff's Motion to Strike Defendant's opposition to Plaintiff's first motion to strike, Dkt. 35. The Court finds that the decisional process would not be aided by oral argument. After reviewing the record and the arguments of the parties, the Court enters the following Order addressing all pending motions.

## BACKGROUND

Plaintiff Michael Hayes is an inmate in custody at the Idaho Department of Correction (IDOC). He describes himself as a "61 year old cripple who [can] not defend himself." *Amend. Compl.*, Dkt. 7 at 19-21. He was assaulted by a fellow inmate on January 25, 2017. He claims that Lt. Nicodemus violated his Eighth Amendment rights by failing to prevent the assault.

On December 10, 2015, Hayes was transferred from the Idaho Maximum Security Institution to cell # 106, Tier E-1, a protective custody unit, where he felt safe and secure. *Id.* at 14. On December 24, 2016, Hayes was moved from cell # 106 to shared cell # 103 with fellow inmate Terry Rasar. *Id.* at 14. On December 29, 2016, Hayes submitted an offender concern form to Lt. Nicodemus asking to be moved because he was having "major problems" with Rasar. *Id.* at 15. Lt. Nicodemus refused to move either inmate, responding, "You just moved there, you need to make it work as best you can." *Id.*

On January 25, 2017, Rasar "violently and viciously attacked Plaintiff and then summoned his buddy inmate Matthew Lee Alexander to take over and continue the vicious assault on Plaintiff." *Id.* at 18. Alexander came into cell # 103 and beat Hayes on the head and face, causing injury to Hayes' face and right eye. *Id.* at 19. Hayes had to undergo eye surgery and now suffers from partial blindness in his right eye.

Hayes alleges that Lt. Nicodemus had knowledge about Rasar's violent tendencies because three other cellmates had asked to be moved from Rasar's cell within 30 days of their placement—all prior to Hayes' placement in Rasar's cell. *Id.* at 15-16. Hayes asserts that Lt. Nicodemus failed to conduct an investigation into Rasar's behavior before placing Hayes into the cell with Rasar. *Id.* at 16-17. Hayes further alleges that Lt. Nicodemus knew that Hayes was a "61 year old cripple" who could not defend himself. *Id.* at 17.

Hayes' original complaint alleging multiple claims against multiple defendants was screened by the Court, which ordered him to file an amended complaint to proceed. Dkt. 6. Hayes subsequently filed an amended complaint. Dkt. 7. The Court screened the amended complaint and ordered that Hayes may only proceed with his claims against Lt. Nicodemus regarding the January 25, 2017 incident with Rasar and Alexander. Dkt. 11 at 7-8.

Lt. Nicodemus filed a Motion for Summary Judgment on June 8, 2020. Dkt. 29. Hayes filed a Motion for Summary Judgment on June 10, 2020. Dkt. 31. Hayes subsequently filed a Motion to Strike Defendant's motion for summary judgment. Dkt. 32. Hayes alleged that he had not received a copy of Defendant's motion as is required by Rule 5 of the Federal Rules of Civil Procedure, and that the motion is now untimely and should accordingly be stricken. *Id.* at 3. Lt. Nicodemus objected

to Hayes' motion to strike and asserted that the Attorney General had in fact served Plaintiff and that Plaintiff received the filing on June 17, 2020. Dkt. 34. Hayes then filed a second Motion to Strike requesting that the Court strike Defendant's opposition and asserting that he had still not received a copy of Defendant's Motion for Summary Judgment as of July 22, 2020. Dkt. 35. Defendant again opposed the motion, citing the June 8, 2020 certificates of service as evidence that Hayes was sent a copy of Defendant's summary judgment pleadings. Dkt. 36.

## ANALYSIS

**A.  Plaintiff has been served copies of Defendant's Motion for Summary Judgment; accordingly, Plaintiff's motions to strike are denied.**

As a preliminary matter, both of Plaintiff's motions to strike under Federal Rule of Civil Procedure 12(f) will be denied. Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) motions are "generally regarded with disfavor," *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003), and the Court has broad discretion in disposing of motions to strike. *Fantasy, Inc., v. Fogerty*, 982 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Federal Rule of Civil Procedure 5 requires that written motions must be served on every party and provides that service may be made by mailing the

motion to the party's last known address. Fed. R. Civ. P. 5(a)(1)(D), (b)(2)(C). In the case of a prisoner pro se plaintiff, the Court is also required to provide the plaintiff with fair notice of the requirements needed to defeat a defendant's motion for summary judgment. *Woods v. Carey*, 684 F.3d 934, 938 (9th Cir. 2012).

In his first motion to strike , Dkt. 32, Hayes asks the Court to strike Defendant's Motion for Summary Judgment, Dkt. 29, contending that he was not served with a copy of that motion. In his second motion to strike, Dkt. 35, Hayes asks the Court to strike Defendant's Opposition to Plaintiff's Motion to Strike, Dkt. 34, again contending that he was not served with a copy of Defendant's Motion for Summary Judgment and arguing that Defendant's opposition to Plaintiff's Motion to Strike is meritless and frivolous.

The Court notes that the certificates of service for Defendant's Motion for Summary Judgment and accompanying memorandum verify that the papers were served on Plaintiff by mail on June 8, 2020. Dkt. 29 at 3; Dkt. 29-1 at 15. And the Court sent the required notice of the summary judgment rule requirements to Plaintiff as a pro se litigant on June 9, 2020. Dkt. 30. Moreover, in an attempt to make sure that Plaintiff received a copy of Defendant's motion, Defendant resent Plaintiff copies of Defendant's summary judgment pleadings on August 13, 2020. Dkt. 36 at 2-3. At this point, well over 90 days have passed since Plaintiff was

resent Defendant's summary judgment pleadings. Plaintiff has had ample time to review the pleadings and respond to Defendant's Motion for Summary Judgment on the merits. Accordingly, both of Plaintiff's motions to strike will be denied.

**B.     Motions for Summary Judgment**

   **1.  Legal Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct

testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in their favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention

to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

### 2. Lt. Nicodemus is entitled to summary judgment.

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. To prevail on an Eighth Amendment failure-to-protect claim, an inmate must satisfy both parts of a two-pronged test. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The risk alleged must be "objectively, sufficiently serious." *Id.* (citations and punctuation omitted). Second, the prison officials must have acted with deliberate indifference to prisoner health or safety. *Id.*

In order to satisfy the first element of the *Farmer* test, the prisoner must provide evidence of "a particularized fear based upon prior threats or upon members of a specific group who have the motive and the ability to commit an assault." *Crofts v. Wessels*, 2019 WL 1431225, at *3 (D. Idaho Mar. 29, 2019) (quoting *Savocchio v. Crabtree*, 1999 WL 562692, at *9 (D. Or. July 12, 1999)). Eight Amendment claims cannot be based on general unsubstantiated fears of assault by fellow inmates. *Id.*

The second element of the *Farmer* test is satisfied if the prison official acted with deliberate indifference to prisoner health or safety. *Farmer*, 511 U.S. at 834.

"Deliberate indifference" is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official may know of a substantial risk "from the very fact that the risk was obvious." *Id.* at 842. However, prison officials are not liable if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844.

The fact-finder may infer subjective awareness from circumstantial evidence. *Id.* at 842. However, the Ninth Circuit has explained that the Eighth Amendment requires more than a "mere threat" of possible harm. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) ("The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur."). In *Crofts*, for example, the court found that the prison guard did not act with deliberate indifference where the inmate "simply asked for a change because he and [his cellmate] were not getting along." 2019 WL 1431225, at *5. The court reasoned that "[e]xpecting prison officials to

move an inmate as soon as they express that they are not getting along with their cellmate is unreasonable." *Id.*

Here, Hayes cannot provide sufficient evidence to show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Hayes stated that he had not had any interaction with Rasar prior to moving into cell # 103, but that he had watched him from a distance and knew him to be "annoying" and "the type of person that would cause major problems." *Hayes Dep.*, Dkt. 29-3 at 65:10-67:6. When asked what he meant by "major problems," Hayes stated: "The best way to describe it is he had—he didn't have people skills. He didn't get along with people, like he didn't—he wasn't friendly, courteous and a kind person to other people. . . . You know, he wasn't kind, courteous and pleasant to be around. He was disrespectful, dirty and annoying." *Id.* at 67:11-20. Thus, the major problems Hayes stated he had with Rasar stemed from Hayes' personal dislike of him. Hayes did not state that he feared for his safety.

Moreover, the majority of Hayes' injuries were caused by inmate Alexander. *Id.* at 86:19-23 (Hayes stated that, "there was no long-term lasting injuries from Rasar. The long-term—the permanent blindness and all of that, most of the pain was all caused by Alexander."). Yet Hayes testified that he had never interacted with Alexander prior to the January 25 incident of violence, that he had never

submitted a concern form about Alexander, and that he had never seen Rasar and Alexander communicate with each other prior to the incident. *Id.* at 67:21-69:18.

Hayes also cannot show that Lt. Nicodemus was deliberately indifferent to Hayes' safety. Hayes points to two sources from which the Court could find that Nicodemus was deliberately indifferent: (1) the alleged knowledge Nicodemus had of Rasar's violent tendencies toward cellmates, and (2) the December 29, 2016 concern form.

First, Hayes alleges that two other inmates had been moved out of the shared cell with Rasar by Lt. Nicodemus due to their incompatibility as cellmates, and that accordingly Nicodemus had knowledge of Rasar's violent tendencies. Hayes testified that he had been told by the two other inmates that they could not get along with Rasar because "he was a real dirty inmate, and he was really annoying; that he caused problems, and they didn't want to be around him. They were afraid there was going to be violence and a fight with him because of his behavior." *Id.* at 63:2-64:6.

But even taking Hayes' testimony as true, as the Court is required to do for purposes of summary judgment, and assuming that this testimony is admissible,[1]

---

[1] Plaintiff's statements regarding what other inmates told him are hearsay and do not
(Continued)

the testimony is insufficient to show that Nicodemus acted with deliberate indifference. Rasar's disciplinary history and C-notes do not reflect a history of assaulting any other inmates, and there is no evidence that Rasar's prior cellmates submitted any concern forms or grievances regarding being housed with Rasar, or that they told Lt. Nicodemus that they feared violence from Rasar. Alexander's record also does not contain a history of violence. Hayes' history likewise does not reflect any prior history with Rasar or Alexander.

Hayes also asserts that the concern form he submitted five days after moving into cell # 103 put Lt. Nicodemus on notice of the risks to Hayes' safety. However, Hayes acknowledges that his December 29 concern form only said that he was having "major problems" with Rasar, and that it did not say that Hayes was concerned for his safety or that Rasar was a threat. *Hayes Dep.*, Dkt. 29-3 at 57:2-16. The concern form also did not mention Alexander, who caused most of Hayes' injuries. As in *Crofts*, it is unreasonable to expect Lt. Nicodemus to move an inmate as soon as they express that they are not getting along with their cellmate.

Taken together, the undisputed facts fail to establish that Lt. Nicodemus

---

appear to fall within any exception to the rule against hearsay. *See* Fed. R. Evid. 801 (defining "hearsay"); Fed. R. Evid. 802, 803 (providing hearsay is not admissible, and setting forth exceptions to the rule against hearsay). Thus, it is unlikely that these statements are admissible. However, the Court will assume admissibility for purposes of summary judgment.

**MEMORANDUM DECISION AND ORDER - 12**

knew of and disregarded an excessive risk to Hayes' safety. Because Hayes cannot prove either element, his Eight Amendment failure-to-protect claim fails.[2] Lt. Nicodemus is accordingly entitled to summary judgment. And for the reasons discussed above, Hayes is not entitled to summary judgment.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion for Summary Judgment (Dkt. 29) is **GRANTED**, and all claims against Defendant Nicodemus are accordingly **DISMISSED**.

2. Plaintiff's Motion for Summary Judgment (Dkt. 31) is **DENIED**.

3. Plaintiff's Motion to Strike Defendant's motion for summary judgment (Dkt. 32) is **DENIED**.

4. Plaintiff's Motion to Strike Defendant's opposition to Plaintiff's motion to strike (Dkt. 35) is **DENIED**.

5. All other claims and Defendants in this action having previously been dismissed (Dkt. 11), this action is **DISMISSED** in its entirety, with

---

[2] Because Hayes' Eight Amendment claim fails on the merits, the Court does analyze the second grounds raised by Nicodemus for summary judgment—that he is entitled to qualified immunity.

prejudice.

DATED: December 23, 2020

_____
B. Lynn Winmill
U.S. District Court Judge